# EXHIBIT 1

Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Mario Palacios

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/29/2025 1:47 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Aguirre, Deputy Clerk

# IN THE SUPERIOR COURT OF CALIFORNIA
# IN AND FOR LOS ANGELES COUNTY

| | |
|---|---|
| MARIO PALACIOS, *individually and on behalf of all those similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> TRADER JOE'S COMPANY, *a California corporation*, <br><br> Defendant. | No. 25STCV28613 <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Mario Palacios ("Plaintiff"), individually and on behalf of all others similarly situated nationwide, by and through undersigned counsel, hereby brings this action against Trader Joe's Company ("Trader Joe's"), alleging that its 100% Juice Organic Freezer Pops ("the Products"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised, and upon information and belief and investigation of counsel alleges as follows:

## PARTIES

1. Plaintiff Mario Palacios is and at all times relevant was a citizen of the state of California, domiciled in Encinitas, California.

2. Defendant Trader Joe's Company is a California corporation with its principal place of business in Monrovia, California. On information and belief, decisions regarding product formulation and labeling are made at this headquarters.

**JURISDICTION AND VENUE**

3. Jurisdiction is proper in the Los Angeles County Superior Court of the State of California pursuant to Section 410.10 of the California Code of Civil Procedure.

4. Venue is proper in Los Angeles, California pursuant to Section 395(a) of the California Code of Civil Procedure, because Los Angeles County is where Defendant resides and is where a substantial portion of the harm alleged occurred.

**FACTUAL ALLEGATIONS**

A. **Consumers Pay A Premium for "Clean Labels."**

5. Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial ingredients, flavors, and preservatives.

6. For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

7. This consumer preference has led to an explosion in the category of "clean label" foods and beverages, or "100% labels." These labels indicate that the food or beverage contains few, minimally processed ingredients, usually natural ones.

8. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 11.44 percent

-2-
CLASS ACTION COMPLAINT

from 2022 to 2031, reaching $361 billion in annual sales by 2031. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

9. Palacios purchased the Products from a Trader Joe's store in Encinitas, California on or about March 1, 2025.

10. Palacios attempts to eat "clean," and to the extent possible tries to buy food products that are minimally processed or adulterated.

**B.  Defendant's False "100% Juice" Claim**

11. Defendant Trader Joe's Company formulates, manufactures, and sells *inter alia* Organic Freezer Pops. Defendant is solely responsible for the contents of the Products' labelling.

12. The Products are sold in a liquid form and then frozen by the consumer after purchase. Under relevant federal and state law, they constitute a "beverage."

13. The front label (or "principal display panel") of the Products prominently states that the Products are "100% Juice":



-3-
CLASS ACTION COMPLAINT

14. Despite being labeled as "100% Juice," the Products also contain non-juice ingredients including water, natural flavors, malic acid, the thickening agent guar gum, and vegetable juice used as a coloring. In fact, water is the most common ingredient by volume in the Products, as shown in the ingredients list:



15. The Products are also largely derived from fruit concentrate, rather than expressed fruit juices. "Concentrate" is a food product made by removing water from fruit, resulting in a thick, syrupy substance that retains the sugar and calories of the original fruit but loses much of its fiber and vitamin C. This process makes it easier to transport and store, as it reduces weight and volume. Fruit concentrate is then "reconstituted" during the manufacturing process for many beverages—including, on information and belief, the Products—by adding water.

16. Under federal regulations set forth at 21 C.F.R. § 101.30(b)(3), a statement such as "100% Juice," when used on a juice that "contains non-juice ingredients that do not result in a diminution of the juice soluble solids" such as the Product, "must be accompanied by the

1  phrase 'with added _____,' the blank filled in with a term such as 'ingredient(s),' 'preservative,' or 'sweetener,' as appropriate (e.g., '100% juice with added sweetener')."

17. The word "accompanied," as used in the regulation, means "to cause to be in association with," as in the given example, "the pictures that [accompany] the text," *see* Merriam-Webster's Collegiate Dict. (11th ed. 2014) (parentheses in original); or "[t]o go along with (another); to attend," with the example given that "[i]n automobile-accident cases, an unlicensed driver is not considered accompanied by a licensed driver unless the latter is close enough to supervise and help the former," *see* Black's Law Dict. (10th ed. 2014).

18. The purpose of the disclosure required by 21 C.F.R. § 101.30(b)(3) is to advise consumers that beverages advertised as "100% Juice" might contain substantial amounts of other ingredients, or be made from concentrate. This information is material to reasonable consumers seeking foods and beverages that are minimally processed or adulterated, such as Plaintiff.

19. The Products' front label contains a small, hard-to-read disclosure purporting to comply with 21 C.F.R. § 101.30(b)(3) to the effect that the Products are "Flavored juice blends from concentrate with other natural flavors & added ingredients."

20. However, this disclosure does not "accompany" the "100% Juice" declaration on the front label as required under 21 C.F.R. § 101.30(b)(3). Instead, it is placed far to the right and below the "100% Juice" declaration, in a small and largely unreadable font and in black type against a darker background. A comparison of the prominent front and center declaration (in a bold white font) and the diminutive disclosure on the far right side of the principal display panel, demonstrates that the disclosure does not "accompany" the declaration in any meaningful manner and does not appear to modify or otherwise relate to the "100% Juice" claim:



21.   A reasonable consumer, viewing the front label of the Products, would not understand that the Products contain substantial amounts of water, are made from concentrate, and contain a number of other non-juice ingredients, which is what the disclosure required by 21 C.F.R. § 101.30(b)(3) is designed to inform consumers. Instead, reasonable consumers viewing the Products' labels would receive the false impression that the Products are made from 100% expressed juice, without concentrates, water, or other ingredients. This impression is false and deceptive.

22. Trader Joe's—a grocery chain that has built its consumer reputation on the sale of organic, minimally processed, and unadulterated food products—intentionally uses font, placement, color, and type size as relates to the required disclosure to give this false impression and deceive and mislead consumers.

23. Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

24. Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to expect that a food product that states that it is "100% Juice" is not made from concentrate and does not contain additives, water, flavorings, preservatives, and other ingredients not found in fruit juices, unless specific, readable disclosures are made to the contrary

25. Plaintiff reviewed the "100% Juice" claim being made on the Products' labels. Plaintiff reasonably understood that claim as a representation that the Products contained only expressed juice and was not made from concentrate. This representation was false.

26. Plaintiff reasonably relied on these label statements such that he would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had he known that Defendant's "100% Juice" representation was false and misleading.

27. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge Plaintiff a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace. In fact, Defendant's prices for the Products are higher than those of competing food products, due *inter*

*alia* to the premium associated with minimally processed or "clean" foods, which the Products are not.

28.     As an example, the Products retail for $3.49 for a 10-pop package at TraderJoes.com. By contrast, fruit flavored "Otter Pops"—which directly compete with the Products but do not make a "100% Juice" claim—retail on Amazon.com for $5.88 for 80 pops. Much of this premium is on information and belief attributable to the false perception that the Products are 100% Juice, is not made from concentrate, and does not contain additives, water, flavorings, preservatives, and other ingredients not found in fruit juices.

29.     Consumers including Plaintiff especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products. That is, consumers depend on food manufacturers to tell the truth about the characteristics of their products while making decisions about which products to buy and consume. Here, Defendant has not told the truth about the Products.

30.     Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action individually and as representative of all those similarly situated pursuant to section 382 of the California Code of Civil Procedure on behalf of all consumers nationwide who purchased the Products within four years prior to the filing of this Complaint.

32. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

33. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

34. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

35. **Numerosity**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the nation.

36. **Existence and Predominance of Common Questions of Law and Fact**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

   b. Whether a reasonable consumer would understand the Products' labels to give the impression that the Products contain 100% expressed juice, and reasonably relied upon that representation;

   c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

    d.  Whether Defendant breached an implied warranty;

    e.  the proper amount of damages;

    f.  the proper scope of injunctive relief; and

    g.  the proper amount of attorneys' fees.

37. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

38. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

39. **Typicality**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

40. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

41. There are no defenses available to Defendant that are unique to the named Plaintiff.

42. **Adequacy of Representation**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

43.     Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

44.     **Superiority**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

   b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

   c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

   d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

45.     Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

-11-
CLASS ACTION COMPLAINT

46. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Defendant would like to purchase the Products and other products sold by Defendant in the future, but cannot currently do so because he cannot rely on the Products' labelling, given the deceptions found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

47. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the accurate reporting of protein content and quality in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

48. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

49. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq.***

50. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

51. Plaintiff is a "consumer" within the meaning of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

52. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

53. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

54. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the "100% Juice" representation made by Defendant on the labels of its Products.

55. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

   c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

   d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e.  Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

56.  By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

57.  Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by its legal obligations and to give notice to all affected customers of its intent to do so.

58.  Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT

59.  Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

60.  Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the juice content of the Products.

61.  Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

62.  Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

63.  Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

64. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

65. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

66. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF IMPLIED WARRANTY

67. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

68. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Products were "100% Juice."

69. Defendant's implied warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an implied warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

70. The Products do not conform to the implied warranty that the Products were "100% Juice," as described herein.

71. As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products'

composition; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the CLRA and/or was unjustly enriched and/or breached an implied warranty;

c. Ordering an awarding of injunctive relief, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

e. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

f. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

September 29, 2025