Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO PALACIOS, *individually and on behalf of all those similarly situated*,<br><br>        *Plaintiff*,<br><br>*v.*<br><br>TRADER JOE'S COMPANY, *a California corporation,*<br><br>        *Defendant.*<br><br>_____ | No. 2:25-cv-10584-CV-AGRx<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hon. Cynthia Valenzuela<br><br>Date: January 30, 2026<br>Time: 10:30 am<br>Courtroom: 10B<br>Filed: September 29, 2025<br>Trial Date: Not set |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION.............................................................................1

BACKGROUND AND PROCEDURAL HISTORY...................................2

STANDARD OF REVIEW .................................................................4

ARGUMENT ..................................................................................5

 I. PLAINTIFF ADEQUATELY ALLEGED THAT THE PRODUCTS' LABELS DO NOT COMPLY WITH FEDERAL LAW.........................................................................5

  A. Section 101.30 Requires a Disclaimer to "Accompany" a Juice Declaration in Order to Prevent Consumer Confusion.............................................5

  B. The Plain Language of Section 101.30 Requires the Disclaimer to be Adjacent to or Adjoining the Declaration..................................................................6

  C. Only Plaintiff's Interpretation of "Accompany" Harmonizes the Provisions of Section 101.30.................9

  D. The Cases Trader Joe's Cites Do Not Support Its Position. ...............................................................10

  E. Defendant's "Proximity" Test Is Inherently Fact-Bound and Cannot be Resolved On a Motion to Dismiss..........13

  F. Plaintiff's Claims Are Not Preempted............................14

 II. REASONABLE CONSUMERS WOULD NOT BE CONFUSED BY THE PRODUCTS' LABEL.........................15

  A. The Reasonable Consumer Is Simply the Ordinary Consumer—Not the Most Educated or Skeptical Consumer.............................................................15

  B. The Products' Label is Deceptive Despite the Disclaimer..................................................................17

  C. A Reasonable Consumer Would Not Understand the Disclaimer to Modify the Juice Declaration, as Federal Law Requires.............................................20

  D. Reasonable Consumers Are Not Required to Review the Ingredients List...........................................23

 III. PLAINTIFF'S ALLEGATIONS SATISFY RULE 9(B)..........24

-ii-

IV.   THE EQUITABLE CLAIMS ARE PLAUSIBLY PLEADED UNDER CALIFORNIA LAW. ..............................25

CONCLUSION ...................................................................................25

-iii-

# TABLE OF AUTHORITIES

## Cases

*Aguayo v. U.S. Bank*,
  653 F.3d 912 (9th Cir. 2011)................................................................. 7

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008) ............................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 3

*Baxter v. Intelius*,
  No. SACV 09-1031, 2010 WL 3791487 (C.D. Cal. 2010).............................. 21

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ............................................................. 15

*Bell v. Publix Super Markets, Inc.*,
  982 F.3d 468 (7th Cir. 2020)......................................................... 10, 21

*Bobo v. Optimum Nutrition, Inc.*,
  No. 14CV2408, 2015 WL 13102417 (S.D. Cal. 2015).................................... 20

*Bro-Tech Corp. v. Thermax, Inc.*,
  No. CIV.A.05-2330, 2007 WL 2319772 (E.D. Pa. 2007) ................................ 7

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (2006)............................................................... 21

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012)............................................................... 21

*Delacruz v. Cytosport, Inc.*,
  No. C 11–3532, 2012 WL 2563857 (N.D. Cal. 2012).................................... 17

*Durnford v. MusclePharm Corp.*,
  907 F.3d 595 (9th Cir. 2018)................................................................. 13

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016)........................................................... 12, 22

*FCC v. AT&T Inc.*,
  562 U.S. 397 (2011) ............................................................................. 5

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995)............................................................. 18, 20

*Hughes v. Bos. Sci. Corp.*,
  631 F.3d 762 (5th Cir. 2011)................................................................. 17

-iv-

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020)...................................................................................... 23

*Ivie v. Kraft Foods Global, Inc.*,
  961 F. Supp. 2d 1033 (N.D. Cal. 2013) ..................................................................... 17

*Kasky v. Nike, Inc.*,
  27 Cal.4th 939 (2002) .............................................................................................. 16

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ............................................................................................. 24

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003)................................................................................... 15

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007)................................................................................... 14

*McClellan v. I-Flow Corp.*,
  776 F.3d 1035, 1040 (9th Cir. 2015)........................................................................ 13

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ................................................................................................. 13

*Mencia-Montes v. Fit Foods Dist., Inc.*,
  No. 24-CV-01768, 2025 WL 1185372 (N.D. Cal. 2025) .................................. 18

*Minnick v. Comm'r*,
  796 F.3d 1156 (9th Cir. 2015).................................................................................... 5

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021)................................................................................. 15, 16

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009)...................................................................................... 3

*Nacarino v. Chobani, LLC*,
  No. 20-cv-07437, 2021 WL 3487117 (N.D. Cal. 2021) .................................. 15

*O'Connor v. Uber Techs., Inc.*,
  No. 13-CV-03826, 2016 WL 9087256 (N.D. Cal. 2016) .................................. 21

*Pappas v. Naked Juice Co of Glendora, Inc.*,
  No. LA CV11-08276, 2012 WL 1925598 (C.D. Cal. 2012) .............................. 11

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013).................................................................................. 13

*Phan v. Sargento Foods, Inc.*,
  No. 20-CV-09251, 2021 WL 2224260 (N.D. Cal. 2021) .................................. 18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Possin v. Experian Info. Sols., Inc.*,
  No. SACV1000156, 2010 WL 11596120 (C.D. Cal. 2010) .............................. 18

*Reynolds v. Wal-Mart Stores, Inc.*,
  No. 4:14CV381, 2015 WL 1879615 (N.D. Fla. 2015) .............................. 17, 18

*Salazar v. Target Corp.*,
  83 Cal. App. 5th 571 (2022).......................................................................... 10, 15

*Scheibe v. ProSupps USA, LLC*,
  141 F.4th 1094 (9th Cir. 2025)................................................................................ 14

*Schreiber v. Burlington N., Inc.*,
  472 U.S. 1 (1985) ....................................................................................................... 7

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
  No. 21-CV-01280, 2021 WL 11593043 (N.D. Cal. 2021) .............................. 18

*Shin v. BMW of N. Am.*,
  No. CV 09-00398, 2009 WL 2163509 (C.D. Cal. 2009).................................. 24

*Spilker v. Shayne Lab'ys, Inc.*,
  520 F.2d 523 (9th Cir. 1975)...................................................................................... 8

*Sponchiado v. Apple Inc.*,
  No. 18-CV-07533, 2019 WL 6117482, at *2 (N.D. Cal. 2019.......................... 11

*United States v. Nader*,
  542 F.3d 713 (9th Cir. 2008)...................................................................................... 8

*United States v. Quesada*,
  972 F.2d 281 (9th Cir. 1992)...................................................................................... 8

*United States v. Redmond*,
  965 F.3d 416 (5th Cir. 2020)...................................................................................... 7

*United States v. Shih*,
  73 F.4th 1077 (9th Cir. 2023)..................................................................................... 5

*Whiteside v. Kimberly Clark Corp.*,
  108 F.4th 771 (9th Cir. 2024)............................................................................ passim

*Whitfield v. United States*,
  574 U.S. 265 (2015) ................................................................................................... 6

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008)............................................................................. 15, 22

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
  372 F.3d 899 (7th Cir. 2004)................................................................................... 14

-vi-

*Yates v. United States*,
  574 U.S. 528 (2015) ............................................................................ 5

**Statutes**

21 U.S.C. § 321(n) ................................................................................ 16

21 U.S.C. § 337 .................................................................................... 13

21 U.S.C. § 343-1(a)(3) ........................................................................ 13

Cal. Civ. Code § 1780(a) ...................................................................... 24

**Regulations**

21 C.F.R. § 101.30(b)(3) ................................................................ 1, 2, 4

**Other Authorities**

*Accompany*, Black's Law Dictionary (11th ed. 2019) ............................ 6

*Accompany*, Merriam-Webster.com,
  https://www.merriamwebster.com/dictionary/accompany ................................ 6

*Accompany*, Oxford English Dictionary,
  https://www.oed.com/view/Entry/1145?rskey=fY4jQe&result=1#eid .............. 6

*Accompany*, Webster's Third New Int'l Dictionary (2002) .................................. 6

Food Labeling; Declaration of Ingredients; Common or
  Usual Name For Nonstandardized Foods; Diluted Juice Beverages,
  58 Fed. Reg. 2897 (1993) ...................................................... 4, 8, 16, 19

Warning Letter of Roberta Wagner, FDA, to
  Brad Alford, Nestle U.S.A. (Dec. 4, 2009) ...................................... 18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**INTRODUCTION**

Under federal law, when a company sells fruit-flavored beverages whose label claims to be "100% Juice," it must make a disclaimer that "accompanies" that declaration if the beverage has other, non-juice ingredients. *See* 21 C.F.R. § 101.30(b)(3). The purpose of this requirement is plainly stated in federal law: to prevent consumer confusion. Defendant Trader Joe's Company has moved to dismiss this lawsuit, which alleges that the company's Organic Freezer Pops ("Products") violate this requirement, in a manner that confuses reasonable consumers under California's Consumers Legal Remedies Act ("CLRA"). But not once in its 24-page brief does Trader Joe's attempt to define what "accompany" means within the meaning of that law.

This silence speaks volumes. "Accompany" as used in section 101.30(b)(3) has an actual meaning, one made clear in relevant dictionary definitions. It means that this disclaimer must be ***adjacent*** to a juice declaration, not—as is the disclaimer on the Products—rendered in small, condensed, unreadable font; set off from the "100% Juice" claim; and confusingly placed next to another, irrelevant label claim about flavoring. The disclaimer on these Products does not comply with the plain meaning of federal law, which is why Trader Joe's is so reluctant to talk about what that law's plain meaning is.

In practice, the position Trader Joe's takes is that "accompany" means "close enough"—close enough to the juice declaration, close enough to readable, close enough to providing the context that federal law requires. But even if this were a viable reading of the law's requirements—and it isn't—this analysis is inherently a factual assertion about what reasonable consumers would take from the presentation of the disclaimer on the Products' label. As the Ninth Circuit and California courts have repeatedly stated, this factual contention is only rarely resolved as a matter of law on the pleadings. This is not one of those rare cases,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

because Plaintiff has plausibly alleged that Trader Joe's intentionally uses font, placement, color, and type size to confuse consumers into believing that the Products contain only juice and no added ingredients, when they do not.

The Complaint stands in a long line of similar claims that California courts have permitted to move to discovery. This motion should likewise be denied in its entirety. To the extent the Court determines any particular averment is lacking, Plaintiff should be granted leave to amend. *See Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

## BACKGROUND AND PROCEDURAL HISTORY

Trader Joe's formulates, manufactures, and sells *inter alia* Organic Freezer Pops, and is solely responsible for their labelling. Compl. ¶ 11. These Products constitute a "beverage" under federal law. Compl. ¶ 12. On the front label, or "principal display panel," the Products prominently state that they are "100% Juice." Compl. ¶ 13. But the Products also contain non-juice ingredients including water, natural flavors, malic acid, the thickening agent guar gum, and vegetable juice used as a coloring, and are largely derived from concentrate, and not expressed juice. Compl. ¶¶ 14-15.

Under federal regulations, a "100% Juice" declaration, when used on a beverage such as the Products, "must be accompanied by the phrase 'with added _____,' the blank filled in with a term such as 'ingredient(s),' 'preservative,' or 'sweetener,' as appropriate (e.g., '100% juice with added sweetener')." Compl. ¶ 16 (quoting 21 C.F.R. § 101.30(b)(3)). Relevant dictionary definitions define "accompany" as "to cause to be in association with" or "to attend." Compl. ¶ 17.

The Products' front label contains a small, hard-to-read disclaimer to the effect that the Products are "Flavored juice blends from concentrate with other natural flavors & added ingredients." Compl. ¶ 19. This disclaimer "is placed far to the right and below the '100% Juice' declaration, in a small and largely

-2-

unreadable font and in black type against a darker background," and "does not 'accompany' the declaration in any meaningful manner and does not appear to modify or otherwise relate to the '100% Juice' claim":



Compl. ¶ 20.

Reasonable consumers viewing the Products' labels would receive the false impression that the Products are made from 100% expressed juice, without concentrates, water, or other ingredients, which impression is false and deceptive

-3-

because the Products contain other, non-juice ingredients. Compl. ¶ 21. Instead, "Trader Joe's—a grocery chain that has built its consumer reputation on the sale of organic, minimally processed, and unadulterated food products—intentionally uses font, placement, color, and type size as relates to the required disclosure to give this false impression and deceive and mislead consumers." Compl. ¶ 22. As a result of this deception, Trader Joe's is enabled to charge a premium for the Products, relative to competing products in the marketplace. Compl. ¶¶ 27-28.

Plaintiff Mario Palacios reviewed the "100% Juice" claim made on the Products' labels, and "reasonably understood that claim as a representation that the Products contained only expressed juice and was not made from concentrate." Compl. ¶ 25. He purchased the Products from a Trader Joe's store in Encinitas, California on or about March 1, 2025. Compl. ¶ 9. Palacios reasonably relied on the Products' label "such that he would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had he known that Defendant's '100% Juice' representation was false and misleading." Compl. ¶ 26.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). A court must accept as true all "well-pleaded factual allegations," and draw all reasonable inferences from those allegations in the non-movant's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss, supra*

-4-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# ARGUMENT

## I.    PLAINTIFF ADEQUATELY ALLEGED THAT THE PRODUCTS' LABELS DO NOT COMPLY WITH FEDERAL LAW.

Trader Joe's asserts—in essentially peremptory fashion—that because the Products "comply with federal labeling requirements," they fall within California's "safe harbor doctrine" and are also preempted, and Plaintiff has no viable state consumer protection claim. *Contra* Memo. 7-10. But Defendant's brief is notably devoid of any sustained analysis of the federal regulation at issue. Defendant's conclusory analysis is belief by the plain language of that regulation, which requires a disclaimer of additional ingredients to "accompany"—*i.e.*, be adjacent to, attached to, or adjoining—the 100% Juice declaration. The disclaimer here does not.

### A.    Section 101.30 Requires a Disclaimer to "Accompany" a Juice Declaration in Order to Prevent Consumer Confusion.

The Products' label is governed by 21 C.F.R. § 101.30, specifically, subsection (b)(3), which states that if a "beverage contains 100 percent juice and also contains non-juice ingredients," a 100 percent juice declaration appearing on a panel that does not include the ingredients list (*e.g.*, the front label) "must be accompanied by the phrase 'with added _____,'" except when "the presence of the non-juice ingredient(s) is declared as a part of the statement of identity of the product." 21 C.F.R. § 101.30(b)(3).

Under this provision, a manufacturer makes a "100% juice declaration" on its beverage has three choices about how to convey to consumers the fact that the beverage contains other ingredients besides juice. *First*, it can make the declaration about other ingredients on the same panel as the ingredients list. This alternative, the FDA found, is not likely to "mislead the consumer because it is in reasonable

proximity to the ingredient statement, so that it will be read by the ordinary consumer in conjunction with that statement under normal conditions of purchase." Food Labeling; Declaration of Ingredients; Common or Usual Name For Nonstandardized Foods; Diluted Juice Beverages, 58 Fed. Reg. 2897, 2915 (1993). *Second*, it can include a disclaimer about other ingredients right in the beverage's description (*e.g.*, "100% Juice With Added Water"). *Third*, it can make the disclaimer in a statement that "accompanies" the description. Whatever alternative is chosen, the express purpose of this regulation is to prevent consumer confusion. Without including a disclaimer in the description, next to the ingredients list, or accompanying the juice declaration, consumers may take the label to "mean the beverage contains juice and no other ingredients," as "the '100% juice' declaration introduces a precision to the description of the product that can result in the consumer concluding that the juice is the only ingredient," when it is not. *Id*.

Trader Joe's determined to forego the more straightforward options of including the disclaimer next to the ingredients list or in the statement of identity, as section 101.30(b)(3) permits. So, to rely on the safe harbor doctrine, it must establish as a matter of law that the disclaimer on its front label "accompanies" the 100% juice declaration within the meaning of the regulation.

### B.    The Plain Language of Section 101.30 Requires the Disclaimer to be Adjacent to or Adjoining the Declaration.

On this point, Defendant's brief lapses into reticence, studiously refusing to grapple with what it means under section 101.30 for a disclaimer to "accompany" the declaration. This silence speaks volumes, as the plain language of the regulation requires the disclaimer to be adjacent to the juice declaration, not (as here) physically separated from the declaration and rendered in an unreadable font.

"Regulations are interpreted according to the same rules as statutes, applying traditional rules of construction." *United States v. Shih*, 73 F.4th 1077, 1092 (9th Cir. 2023) (quoting *Minnick v. Comm'r*, 796 F.3d 1156, 1159 (9th Cir. 2015)). The starting point is the "plain language," *United States v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004), and courts give undefined terms in a regulation their ordinary meaning, *see FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011). "Ordinarily, a word's usage accords with its dictionary definition." *Yates v. United States*, 574 U.S. 528, 537 (2015).

Every relevant dictionary definition of the word "accompany" emphasizes a quality of direct connection, adjoinment, attachment, being next to, being beside, or going along with. For example, Black's Law Dictionary defines "accompany" as "[t]o go along with (another); to attend." *Accompany*, Black's Law Dictionary (11th ed. 2019). Merriam-Webster likewise defines "accompany" as "to go with as an associate or companion." *Accompany*, Merriam-Webster.com, https://www.merriamwebster.com/dictionary/accompany. The Oxford English Dictionary defines the word as "[t]o go with (a person) as a companion, escort, or attendant." *Accompany*, Oxford English Dictionary, https://www.oed.com/view/Entry/1145?rskey=fY4jQe&result=1#eid. And the Third New International Dictionary likewise defines "accompany" to mean "to exist or occur in conjunction or association with," as in the exemplar phrase "the text which *accompanies* these pictures." *Accompany*, Webster's Third New Int'l Dictionary (2002) (emphasis in original). Fundamental to all of these definitions is **_adjacency_**: a thing "accompanies" another thing when it is right next to its object, in a manner that makes it clear that it is "associated with" or acting as an escort or companion to that object.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Applying these definitions, courts have held that "accompaniment" requires close companionship—and that even a minimal distance between two things can be far enough to break the relationship.

For example, the Supreme Court applied the Oxford English Dictionary definition of accompany ("go with") to hold that a bank robber accompanies his victim when he "goes with" her by "guid[ing] her from the hallway to a computer room"—a finding that rests on adjacency, even physical contact. *Whitfield v. United States*, 574 U.S. 265, 266 (2015).[1]

Applying the same OED definition, the Fifth Circuit held that bank robbers did not "accompany" victims as they moved into an adjacent room, precisely because of physical separation, however slight. "Though the Government emphasizes the short distance between Redmond and the tellers and the adjacent room, Redmond did not move 'with' the tellers to the adjacent room, and he therefore did not 'accompany' them there," the court held. *United States v. Redmond*, 965 F.3d 416, 419 (5th Cir. 2020). *See also Bro-Tech Corp. v. Thermax, Inc.*, No. CIV.A.05-2330, 2007 WL 2319772, at *1 (E.D. Pa. 2007) (applying dictionary definition and holding that "non-contemporaneous missive, sent several days after Plaintiff's subpoenas had been served clearly did not accompany those subpoenas"). In all of these cases, the undefined term "accompany" was held to require direct physical connection: adjacency, adjoinment, or attachment.

---

[1] The Court held that the robber's "accompaniment" of his victim need not be of long duration or cover substantial ground; accompaniment occurs "even if the movement occurs entirely within a single building or over a short distance." *Whitfield*, 574 U.S. at 270. But however limited in duration, the accompaniment still needs to feature close contact or connection, as the Court's examples make clear: "[A] hostage-taker's movement of one of his victims a short distance to a window, where she would be exposed to police fire; or his use of the victim as a human shield as he approaches the door." *Id*. at 269–70.

### C.    Only Plaintiff's Interpretation of "Accompany" Harmonizes the Provisions of Section 101.30.

This interpretation of section 101.30(b)(3) gains especial force when the word "accompany" is read together with other words in that regulatory provision—as this Court must do. *See Aguayo v. U.S. Bank*, 653 F.3d 912, 927 (9th Cir. 2011) (regulatory provisions "should be read together and given related meaning when construing a statute or regulation") (citing *Schreiber v. Burlington N., Inc.,* 472 U.S. 1, 8 (1985)).

Section 101.30(b)(3), as noted above, sets forth (in the very same sentence) several ways that a manufacturer can comply. First, it can put the disclaimer next to the ingredients list. Then, it can make a disclaimer "as a part of the statement of identity of the product"— for example, by describing its beverage as "100% Juice With Added Water." Alternatively, it can make the declaration "accompanied by the phrase 'with added _____'" on the front label. 21 C.F.R. § 101.30(b)(3).

Clearly, given the fact that these alternative routes are contained within the same regulatory provision, and even within the same sentence, the drafters intended a parallelism between them, to which intent the Court must give effect. *See, e.g.*, *United States v. Quesada*, 972 F.2d 281, 283 (9th Cir. 1992) (laws must be "[r]ead harmoniously as a whole," not as if drafter "had intended to set up one standard" in one provision, and another in a different but closely related provision). Notably, the first two alternatives put the disclaimer right next to the ingredients list or within the beverage's description; consumer confusion is dispelled by making it immediately clear to readers under normal conditions of purchase that there are other ingredients besides juice in the beverage.

The only way to read the third alternative in section 101.30 harmoniously with its regulatory partners is to give "accompany" its plain and ordinary meaning of adjacency, adjoinment, or attachment, in order to parallel the immediately

-9-

contextualizing effect of a disclaimer right in the beverage's description or next to the ingredients list. This is the only reading of "accompany" that gives effect to the regulation's expressly stated purpose (*see* 58 Fed. Reg. at 2915) of avoiding consumer confusion over whether juice beverages have added ingredients. *See, e.g., United States v. Nader*, 542 F.3d 713, 720 (9th Cir. 2008) ("It is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose."). Manufacturers like Trader Joe's have several ways to comply with section 101.30; but each alternative requires the juice declaration to be immediately contextualized by a plainly discernible disclaimer that clearly modifies the juice declaration.

### D.     The Cases Trader Joe's Cites Do Not Support Its Position.

Trader Joe's cites a number of cases in support of its otherwise conclusory reading of "accompany." But examined closely, these cases largely support Palacios's interpretation of the undefined term "accompany." In general, these precedents emphasize the need for a disclaimer to be immediately adjacent to a deceptive claim in order to dispel ambiguity and resolve consumer confusion.

For example, Trader Joe's leans heavily on *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 774 (9th Cir. 2024). *See* Memo. 13-14. But the case actually demonstrates precisely the plausibility of Plascencia's allegations here.

In *Whiteside*, consumers sued a manufacturer of baby wipes, arguing that "the words 'plant-based wipes' (or 'plant-based ingredients') and 'natural care®' on the front label, together with the nature-themed imagery displayed on the packaging, suggest that Defendant's baby wipes contain only 'water, natural ingredients, and ingredients that come from plants and that are not subject to chemical modification or processing,'" when in fact they contained substantial amounts of synthetic ingredients. *Whiteside*, 108 F.4th at 774.

-10-

The Ninth Circuit drew a distinction between "Asterisked Products"—where a disclaimer that the baby wipes were ""*70%+ by weight' was present elsewhere on the front label"—and "Unasterisked Products" that had no such disclaimer. *Id*. at 776. To Trader Joe's, this distinction disposes of this case: As in *Whiteside*, it claims, any ambiguity created by the "100% Juice" claim is dispelled by the front-label disclaimer, making these juice bars the equivalent of the "Asterisked Products." Memo. 13.

But *Whiteside* actually highlights that under the CLRA, the Court must consider "the context in which that information is provided and used"—one aspect of which is precisely where the disclaimer appears in relation to the allegedly deceptive claim. *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 584 (2022) (quoting *Bell v. Publix Super Markets, Inc*., 982 F.3d 468, 477 (7th Cir. 2020)). In *Whiteside*, as clearly shown in a picture reproduced by the Ninth Circuit, the consumer confronted a disclosure on the Asterisked Products that was ***immediately adjacent*** to the allegedly deceptive "plant-based" label claim:



*Whiteside*, 108 F.4th at 775.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

That is, within the meaning of section 101.30(b)(3), the disclosure in *Whiteside* "accompanied" the deceptive claim because it was adjacent to it, providing immediate context that dispelled any ambiguity. But here, the claim is set off from the deceptive "100% Juice" claim, in small, condensed, dark, and not easily readable typeface. Moreover, as discussed further below (*see* Argument II.C), the disclaimer appears to qualify a different claim regarding the flavor of the Products, not the 100% Juice declaration. This case presents a factual dispute that *Whiteside* did not—and factual disputes are not resolved on a Rule 12 motion.

Likewise, Trader Joe's relies on *Sponchiado v. Apple Inc*. to support its claim that the disclaimer "accompanies" the 100% Juice declaration despite a purported "two-inch gap" between them. Memo. 15.[2] But in *Sponchiado,* "the corresponding footnote" that contained the relevant disclaimer was "placed ***immediately after*** the last word in the [allegedly deceptive] statement." No. 18-CV-07533, 2019 WL 6117482, at *2 (N.D. Cal. 2019) (emphasis added). That is, the footnote in *Sponchiado* "accompanied" the deceptive claim, because it was adjacent to it. The disclaimer on the Products is not.

Finally, Trader Joe's relies on *Pappas v. Naked Juice Co of Glendora, Inc*., No. LA CV11-08276, 2012 WL 1925598 (C.D. Cal. 2012). *See* Memo. 15. But in that case, the plaintiff alleged consumer confusion based on the disclaimer's "with other ingredients" wording, "as opposed to the regulation-required 'with added ingredients.'" *Id*. at *2. The court concluded that this slight variation in wording did not give rise to consumer confusion. *Id*. The case is thus wholly irrelevant to the question here: whether the disclaimer on the Products' front label "accompanies" the 100% Juice declaration within the meaning of section 101.30.

---

[2] Defendant's contention that this "gap" is two inches is unsupported by anything other than an assertion in its brief. But even assuming Trader Joe's is right, that's hardly an immaterial amount of space on a label that is perhaps six inches wide.

-12-

### E.    Defendant's "Proximity" Test Is Inherently Fact-Bound and Cannot be Resolved On a Motion to Dismiss.

Ultimately, though it offers no specific definition of or gloss on the undefined regulatory term "accompany," Trader Joe's appears to take a "close enough" approach: If the disclaimer is in some otherwise undefined "proximity" to the juice declaration, that's good enough for section 101.30. Memo. 15.

But "accompany" has an actual dictionary definition, which controls. That dictionary definition does not support the reading propounded by Trader Joe's—a distinct clue about why Defendant's brief so strenuously avoids grappling with the meaning of the word at the heart of this dispute. On this basis alone, the motion should be denied, as the word "accompanied" in section 101.30 requires adjacency under every relevant definition.

Moreover, even on its face Defendant's proffered "proximity" test cannot be a basis for granting a motion to dismiss under Rule 12. Presumably, Trader Joe's would acknowledge that even under its proximity test, some placement of a disclaimer on a front label would *not* satisfy section 101.30—say, a disclaimer in 6-point font situated at the bottom right-hand corner of the front panel. (If Defendant would *not* acknowledge this point, its proximity test evidently amounts to no test at all, besides rendering much of section 101.30 surplusage.) But once the obvious questions prompted by Defendant's test are asked—*How close is close enough? How readable is readable enough?*—this Court is immediately operating in the realm of substantive fact-based determinations that cannot be resolved against the non-movant on a motion to dismiss.

As such, Defendant's reliance on the "safe-harbor doctrine" is unavailing. "To fall within the safe harbor, the challenged conduct must be affirmatively permitted by statute." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). Here, Plaintiff has plausibly alleged that the Products' labels are unlawful because

-13-

the required disclaimer does not "accompany" the 100% Juice declaration within the meaning of section 101.30. There is no safe harbor for conduct plausibly alleged to be unlawful.

### F.      Plaintiff's Claims Are Not Preempted.

Finally, Trader Joe's asserts that Defendant's claims are preempted under the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 337 *et seq.*, apparently regardless of the definition of "accompany." *Contra* Memo. 9-10. Not so.

The FDCA contains an express preemption clause, under which states are prohibited from enacting food labelling laws or regulations that are "not identical" to the FDCA or its implementing regulations. 21 U.S.C. § 343-1(a)(3). But Congress did not attempt to completely preclude such state laws. *See In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008) ("Congress clearly stated its intent to allow states to establish their own identical laws."). Moreover, the scope of Section 343 must be narrowly construed. *See Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). And the Supreme Court has "long presumed that Congress does not cavalierly pre-empt state-law causes of action," particularly in cases involving the historic police powers of the States to regulate health and safety. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Thus, state laws are only preempted if they are not "equal to, or substantially identical to, requirements imposed by or under the [FDCA]." *Id*. at 496–97 (1996). Such claims under state consumer protection law thread a "narrow gap": "The plaintiff must be suing for conduct that *violates* the FDCA … but the plaintiff must not be suing *because* the conduct violates the FDCA." *Perez v. Nidek Co*., 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis in original).

"Because preemption is an affirmative defense [Trader Joe's] bears the burden of showing that [Palacios's] claims are preempted." *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1099 (9th Cir. 2025). A plaintiff escapes preemption

if he plausibly alleges that a food "is not only mislabeled under state law, but also misbranded under the [FDCA]." *Id*. Only when the plaintiff "'pleads itself out of court,' by admitting all the elements of an affirmative defense, may a complaint that otherwise states a claim be dismissed." *Id.* at 1098 (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)).

Here, as set forth above, Palacios has plausibly alleged that the Products are mislabeled under section 101.30 because the disclaimer does not "accompany" the 100% juice declaration. This plausible allegation successfully threads the "narrow gap" and does not impose on Trader Joe's a labeling requirement that differs from those found in federal law. His claim is not preempted.

## II.    REASONABLE CONSUMERS WOULD NOT BE CONFUSED BY THE PRODUCTS' LABEL.

Trader Joe's also argues that Palacios's allegations fail to satisfy the "reasonable consumer" test that governs the CLRA, for three reasons. First, he asserts that reasonable consumers would look to the front-label disclaimer to discover the truth about the "100% Juice" claim. Second, it asserts that reasonable consumers would review the ingredients list for the same purpose. Finally, it asserts that reasonable consumers would understand the name of the flavor "cherry limeade" to indicate the presence of other ingredients. *Contra* Memo. 10-18.

### A.    The Reasonable Consumer Is Simply the Ordinary Consumer— Not the Most Educated or Skeptical Consumer.

All of these arguments fail, for reasons rooted in the very nature of the reasonable consumer test. Under the CLRA, whether advertising is deceptive is "generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on" a motion to dismiss. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115,

-15-

134-35 (2007). As such, granting a motion to dismiss on this question is only appropriate in "rare situation[s]," *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), and only when "***no*** reasonable consumer" could plausibly be misled, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (emphasis added). Only when a plaintiff's allegations are "so facially illogical, implausible, or fanciful that ***no*** reasonable consumer" could be deceived should a complaint should be dismissed before discovery. *Salazar*, 83 Cal. App. 5th at 583.

Further, the reasonable consumer "is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'" *Williams*, 552 F.3d at 938 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 509–10 (2003)). And "[c]onsumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Bell*, 982 F.3d at 476. *See also Whiteside*, 108 F.4th at 782 (consumers reasonably bring a lower level of care to review of "everyday" products) (citing *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021)). Thus, even claims that are truthful taken individually can deceive the reasonable consumer if a defendant makes "statements or other expressive content" that "clearly imply[]" a materially false claim. *Nacarino v. Chobani, LLC*, No. 20-cv-07437, 2021 WL 3487117, at *7 (N.D. Cal. 2021).

"The fact that a . . . person who knew the whole truth . . . would not be led astray by [the advertising] does not make it lawful," and California consumer protection laws exist "to protect the general public who read advertisements and are likely to know nothing of the facts, not the dealers who publish them or other experts on their subject-matter." *Lavie*, 105 Cal. App. 4th at 510. And critically, as set forth in greater detail below, the reasonable consumer standard does not

-16-

impose a duty on consumers to investigate deceptive front-label claims by viewing the back label ingredients panel to "contextualize" those claims. *See, e.g., Whiteside*, 108 F.4th at 782 ("plausible allegations" of deceptive claims on a label "preclude Defendant's reliance on the back-label ingredients list at this stage").

### B.   The Products' Label is Deceptive Despite the Disclaimer.

These principles govern Defendant's reasonable consumer argument, which is wholly unavailing. Trader Joe's insists that reasonable consumers would not be confused, because the presence of the disclaimer on the front label means that there is "no deceptive act to be dispelled." Memo. 12. But though "literal truth can sometimes protect a product manufacturer from a misleading claim, … it is no guarantee.'" *Moore*, 966 F.3d at 1017 (quoting *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1166 (2018)). This is because the CLRA "prohibit[s] 'not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)). Moreover, whether an advertisement is misleading and misbranded under the FDCA requires consideration not merely of the words used on a label, but also "(among other things) … representations made or suggested by statement, word, ***design, device***, or any combination thereof." 21 U.S.C. § 321(n) (emphasis added).

Here, as shown above, the "design" of the Products' front label is plausibly alleged to be misbranded under the FDCA because the added-ingredients disclaimer does not "accompany" the juice declaration within the meaning of section 101.30—a requirement imposed precisely because it prevents consumer confusion. *See* 58 Fed. Reg. at 2915. On this basis alone, the motion should be denied, as consumers reasonably come to rely on manufacturers' compliance with federal regulations of this kind in making their purchasing decisions. *See, e.g.,*

-17-

*Delacruz v. Cytosport, Inc.*, No. C 11–3532 CW, 2012 WL 2563857, at *7 (N.D. Cal. 2012) (FDA regulations "may lend objective criteria by which to determine whether certain words and phrases used on the labels are misleading"); *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1043 (N.D. Cal. 2013) (same). *See also Hughes v. Bos. Sci. Corp.*, 631 F.3d 762, 775 (5th Cir. 2011) (plaintiff plausibly relied on defendant's breach of FDA regulations to show breach of a state-law duty); Compl. ¶ 24 (alleging that "federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages").

But even aside from the plausible allegation that the Products are misbranded and misleading under the FDCA, reasonable consumers could be deceived by the front label's "design" into believing that the beverages contain only juice, instead of other added ingredients. Compl. ¶ 22 (alleging that Trader Joe's "intentionally uses font, placement, color, and type size as relates to the required disclosure to give this false impression and deceive and mislead consumers"). As a federal court held in a case involving Florida consumer protection law (which like California employs the reasonable consumer test), "When different size type is used, as [Trader Joe's] has chosen to do, the presentation is relevant when reading and understanding … whether the label is misleading." *Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14CV381, 2015 WL 1879615, at *6 (N.D. Fla. 2015).

In that case, the court noted that "[a] consumer thinking about buying this product"—like the Products, juice beverages that claimed to be "100% Juice"—would "observe natural breaks made by progressively smaller fonts," and reasonably be misled about the beverages' juice content by the size and placement of supposedly contextualizing disclaimers. *Id*. at *7. The court concluded, "The modifying effect of '100%,' such as it is, diminishes with the break." *Id*.

-18-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Moreover, lest it be suggested that this analysis is limited to Florida courts, the Ninth Circuit has acknowledged that an otherwise truthful disclaimer appearing on a label can be misleading if it "is hidden or unreadably small." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). And multiple courts in this Circuit have reached similar conclusions regarding the effect on reasonable consumers of disclaimers made in smaller and unreadable fonts. *See, e.g.*, *Possin v. Experian Info. Sols., Inc.*, No. SACV1000156, 2010 WL 11596120, at *4 (C.D. Cal. 2010) (motion to dismiss on reasonable consumer grounds denied where "[t]he degree of contrast between the text and its background is not high enough, and the text not large enough, for the Court to find that, as a matter of law, the text was not 'hidden or unreadably small' or that 'no reasonable reader could ignore it.'"); *Mencia-Montes v. Fit Foods Dist., Inc.*, No. 24-CV-01768, 2025 WL 1185372, at *1 (N.D. Cal. 2025) (denying motion where disclaimer was at bottom of label "in even smaller font"); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280, 2021 WL 11593043, at *11 (N.D. Cal. 2021) (denying motion where "disclaimer is … in small font"); *Phan v. Sargento Foods, Inc.*, No. 20-CV-09251, 2021 WL 2224260, at *3 (N.D. Cal. 2021) (same).

In fact, in *Reynolds*, the district court cited to a 2009 FDA warning letter to a manufacturer selling a juice beverage labeled as "100% Juice," concerning a "separate, smaller statement on those [products'] labels" that "appears in a smaller font and white print on a colored background," which described the beverages as "Flavored juice blend from concentrate with other natural flavors & added ingredients." *Reynolds*, 2015 WL 1879615 at *7 (quoting Warning Letter of Roberta Wagner, FDA, to Brad Alford, Nestle U.S.A. (Dec. 4, 2009)), attached hereto as Weller Decl. Exhibit A. The FDA warned that the "manner in which the latter statement is presented makes it less conspicuous and prominent than the

-19-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

other label statements and vignettes and therefore less likely to be read or understood by consumers at the time of purchase." *Id*.

So too here. Even on the highly flattering, resized mock-up of the Products' label that Trader Joe's attaches to its motion, the disclaimer regarding added ingredients is separate from the 100% Juice declaration (itself a violation of federal law); appears in a much smaller, more condensed font; and is not particularly readable, especially when displayed against a hot pink background. The "modifying effect" of this disclaimer thus "diminishes with the break." *Id*. This diminishment gives rise to factual dispute—*would reasonable consumers understand what is being conveyed here?*—that precludes resolution of the reasonable-consumer inquiry on a motion to dismiss.

**C.    A Reasonable Consumer Would Not Understand the Disclaimer to Modify the Juice Declaration, as Federal Law Requires.**

Independent of the fact that the disclaimer is small, condensed, and unreadable is the fact that—to even a casual observer, and certainly to the reasonable consumer acting under "normal conditions of purchase," 58 Fed. Reg. at 2915—the disclaimer does not modify the allegedly deceptive statement, the 100% Juice declaration. Rather, as even the Defendant's highly flattering mock-

-20-

up of the label shows, the disclaimer appears to modify the description of the flavor—which is a different representation entirely:



Memo. 8.

Notably, Trader Joe's actually agrees, acknowledging that the disclaimer appears in "immediate proximity to the named flavors." Memo. 17. Somehow, it concludes from this fact that a consumer would understand the disclaimer to be modifying what it vaguely refers to as "the contents of the Freezer Pops." *Id*.

This is misdirection. The placement of the disclaimer—besides being unlawful under section 101.30—precludes any argument that reasonable consumers would look to it to contextualize the ***100% Juice declaration***, which is the relevant statement here. Indeed, many of the cases cited by Trader Joe's turn fundamentally on the fact that the disclaimer appeared directly adjacent to the allegedly deceptive statement, which meant it clearly modified that statement. *See, e.g., Freeman*, 68 F.3d at 289 ("The qualifying language appears immediately next to the representations it qualifies.") (cited at Memo. 12); *Whiteside*, 108 F.4th at 775 (cited at Memo. 12-14); *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408, 2015 WL 13102417, at *1 (S.D. Cal. 2015) (disclaimer appeared "either next to the protein type or above GOLD STANDARD, depending on the product.") (cited

-21-

at Memo. 12-14). Other cases support the proposition that adjacency is key to whether a reasonable consumer would comprehend the supposedly contextualizing disclaimer. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (no confusion because advertisements included a disclaimer that "other restrictions may apply" adjacent to allegedly deceptive statements); *Baxter v. Intelius*, No. SACV 09-1031, 2010 WL 3791487, at *3-4 (C.D. Cal. 2010) (no confusion because disclaimer appeared right next to where the consumer had to affirm agreement to terms). But where a supposed disclaimer "does not immediately follow any of [Defendant's] alleged [mis]representations," there is "a factual question … whether the disclaimer is effective" that precludes dismissal under Rule 12. *O'Connor v. Uber Techs., Inc*., No. 13-CV-03826, 2016 WL 9087256, at *2 n.1 (N.D. Cal. 2016).

Moreover, it is not the case that a consumer would be unreasonable in assuming that the disclaimer relates to the flavoring, and not to the 100% Juice declaration—which by law it is supposed to modify in any event. The disclaimer refers repeatedly to the *flavoring* of the Products. And a fruit beverage may have a characterizing flavor (such as cherry limeade) that is provided in large part by fruit juices other than the characterizing fruit flavor. (Indeed, that is precisely the factual scenario presented by *Reynolds*, cited above.) An ordinary, reasonable consumer viewing this label would be entirely justified in assuming this disclaimer is telling him that the characterizing flavor is provided by fruit juices *other than* cherries and limes—and *not* that the prominent 100% Juice declaration elsewhere on the label is not true. *See Colgan v. Leatherman Tool Grp., Inc*., 135 Cal. App. 4th 663, 682 (2006) (reasonable consumer not required to be "versed in the art of inspecting and judging a product" or "in the process of its preparation or manufacture"); *Bell*, 982 F.3d at 476 (reasonable consumer does not have "an

obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product").[3]

### D. Reasonable Consumers Are Not Required to Review the Ingredients List.

Finally, Trader Joe's asserts that a reasonable consumer would review the ingredients list, which would "confirm[] that the Freezer Pops contain juice concentrate (not expressed juice) and other ingredients." Memo. 15-16. But reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939-40.

Here, Defendant's failure to comply with federal law requiring a disclaimer to accompany a 100% Juice Declaration; use of small, condensed, unreadable font; and the deliberate deception relating to placing the disclaimer next to flavor descriptions, all make an unambiguous implied claim that the Products contain only fruit juice, not other ingredients. And "if a defendant *does* commit an act of deception … 'the presence of fine print revealing the truth is insufficient to dispel that deception.'" *McGinity*, 69 F.4th at 1098 (quoting *Ebner*, 838 F.3d at 962); *Whiteside*, 108 F.4th at 782 ("plausible allegations" of deceptive claims on a label "preclude Defendant's reliance on the back-label ingredients list at this stage").

---

[3] Trader Joe's also argues that the description of one of the Products' flavors as "cherry limeade" requires dismissal, relying on the supposed dictionary definition of "limeade." *Contra* Memo. 17-18. For the reasons set forth in Plaintiff's opposition to the Request for Judicial Notice, reliance on a dictionary definition in this instance is improper. Those points are incorporated here. Two others should be noted. First, only one of the three flavors of the Products' uses an "-ade" suffix. And in the sole case cited by Trader Joe's in support, the court found that "[r]egarding the defendant's claim that no consumer could be misled because the word 'ade' means 'sweet drink'" and thus contains sugar, "that issue cannot be determined as a matter of law." *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 965 (N.D. Cal. 2022) (cited at Memo. 17).

So why did Trader Joe's not simply put the disclaimer right next to the 100% Juice declaration, as federal law requires? The Court can reasonably infer from the pleaded facts that Defendant sees value in label claims that emphasize all-juice beverages, free of the other ingredients also used in these Products. Compl. ¶¶ 6, 27 (noting the economic premium associated with "clean label claims" and relative to key competitors' products). Simply put, there is money in deceiving consumers into believing that foods are "clean" and single-ingredient—hence Defendant's "intentional[] uses [of] font, placement, color, and type size" to hide the ball from reasonable consumers hurriedly reviewing a low-cost product. Compl. ¶ 22.

## III.   PLAINTIFF'S ALLEGATIONS SATISFY RULE 9(b).

Trader Joe's also offers a brief argument that Plaintiff failed to satisfy the Rule 9(b) particularity requirement. Memo. 18-19. Not so. Rule 9(b) requires only that "plaintiff's allegations … give the defendant" notice of a plaintiff's theory of liability and "provide the court 'some assurance that the theory has a basis in fact.'" *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (quotation omitted). The Complaint lays out in granular detail what is alleged to be deceptive about Defendant's "100% Juice" claim, which allegations largely track the argument made herein. *See* Compl. ¶¶ 11-24. This very motion to dismiss demonstrates that Trader Joe's has been afforded notice of Palacios's theory of liability: Defendant's Memorandum does not evince any confusion concerning what is being alleged here, which is all that Rule 9(b) requires.

Other than that, Trader Joe's quibbles with Plaintiff's allegations of reliance. Those are straightforward: He "reviewed the '100% Juice' claim being made on the Products' labels"; understood it to mean that the Products contained only fruit juice; and would not have purchased the Products, or would have paid less, if he had known that they were not 100% juice. Compl. ¶ 25-26. This is sufficient. "Plaintiffs are not required to plead 'reliance' and 'materiality' with

-24-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

particularity, because those elements are grounded in the … CLRA's 'as a result of' language and are thus distinct from the common law fraud element of 'justifiable reliance.'" *Shin v. BMW of N. Am.*, No. CV 09-00398, 2009 WL 2163509, at *4 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1780(a)). *See also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 (2011) (allegation that plaintiff "saw and relied on the labels for their truth in purchasing" Products sufficient to allege reliance under the CLRA).

## IV.    THE EQUITABLE CLAIMS ARE PLAUSIBLY PLEADED UNDER CALIFORNIA LAW.

Finally, Trader Joe's argues that the unjust enrichment and breach of warranty claims fail because there is no "actionable representation," and because they fail to allege which state's law governs the claims. Memo. 19-20. As to the first contention, for the reasons stated herein, Plaintiff has plausibly alleged an actionable misrepresentation. As to the second, there is simply no mystery here. These equitable claims are governed by California law, which both provides the sole pleaded statutory claim, and is the place where Mr. Palacios and Trader Joe's are citizens and residents. Compl. ¶¶ 1-2.

## CONCLUSION

"Close enough" works for horseshoes and hand grenades, but not for statutory interpretation. The Products' label is plausibly alleged to be non-compliant with federal law and confusing to reasonable consumers. Considering the foregoing, Defendant's motion to dismiss the Complaint should be denied in its entirety. And even if the Court were to conclude that something essential is lacking in Plaintiff's averments, he should be granted leave to replead his Complaint. *See Bly–Magee*, 236 F.3d at 1019.

Respectfully submitted,

**CHARLES C. WELLER, APC**

/s/ *Charles C. Weller*

Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

January 9, 2026

-26-

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief is in 14-point Times New Roman, a proportionally spaced font, and does not exceed 25 pages, which complies with the Court's standing order in civil cases [D.E. 13, at *9].

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date, January 9, 2026, I caused the foregoing to be filed into the docket of this matter via the Clerk of Court's CM/ECF system, which filing caused service to be made on all counsel of record.

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS