Dawn Sestito (S.B.# 214011)
Natalie D. Camastra (S.B.# 324719)
O'MELVENY & MYERS LLP
400 S. Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
dsestito@omm.com
ncamastra@omm.com

Martha Hutton (S.B.# 279335)
O'MELVENY & MYERS LLP
1625 Eye Street NW #10
Washington, DC 20006
Phone: (202) 383-5300
Fax: (202) 383-5414
mhutton@omm.com

*Attorneys for Defendant
Trader Joe's Company*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO PALACIOS, *individually and on behalf of all those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S COMPANY, *a California corporation*,<br><br>Defendant. | Case No. 2:25-cv-10584-CV-AGRx<br><br>**REPLY IN SUPPORT OF TRADER JOE'S COMPANY'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Cynthia Valenzuela<br>Hearing Date: January 30, 2026<br>Hearing Time: 10:30 am<br>Courtroom: 10B |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................ 3

    A.  The Safe Harbor Doctrine Bars Plaintiff's Claim................................ 3

    B.  Plaintiff's Claims Are Impliedly Preempted .................................... 4

    C.  The Freezer Pops' Label Would Not Mislead a Reasonable Consumer ...................................................................................... 6

        i.  The Label Makes Clear That the Product Contains Water And Non-Juice Ingredients ........................................... 6

        ii.  Plaintiffs' Reliance On Caselaw From A Florida District Court Is Misplaced............................................. 9

        iii. The Disclosure Need Not Be "Immediately Adjacent" To The Phrase "100% JUICE" For Reasonable Consumers To Link the Two Statements ...................... 10

    D.  The Complaint Fails To Satisfy Rule 9(b)......................................... 13

    E.  Plaintiff' Breach of Implied Warranty and Unjust Enrichment Claims Fail ..................................................................... 14

III. CONCLUSION ................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anthony v. Pharmavite*,
  2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ........................................................ 13

*Bird v. First Alert, Inc.*,
  2015 WL 3750225 (N.D. Cal. June 15, 2015) ................................................... 14

*Bobo v. Optimum Nutrition, Inc.*,
  2015 WL 13102417 ..................................................................................... 12, 13

*Borchenko v. L'Oreal USA, Inc.*,
  389 F.Supp.3d 769 (C.D. Cal. 2019) ................................................................ 5

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ........................................................................................... 5

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ...................................................................................... 4

*Chase v. Hobby Lobby Stores, Inc.*,
  2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) .................................................... 14

*Collyer v. Catalina Snacks Inc.*,
  712 F.Supp.3d 1276 (N.D. Cal. 2024) ............................................................. 5

*Dunbar v. Medtronic, Inc.*,
  Case No. (C.D. Cal. 2014) ................................................................................. 5

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ............................................................................ 4

*Elliott v. Conagra Brands, Inc.*,
  2024 WL 3275567 (E.D. Cal. July 1, 2024) ..................................................... 8

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .............................................................................. 7

*In re Bard IVC Filters Prods. Liab. Litig.*,
  2018 WL 4356638 (D. Ariz. Sept. 12, 2018) .................................................. 5

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ........................................................................... 14

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
  534 F. Supp. 3d 1067 (N.D. Cal. 2021) ........................................................... 15

*Johnson-Jack v. Health-Ade LLC*,
  587 F. Supp. 3d 957 (N.D. Cal. 2022) ............................................................. 10

*Kent v. Conopco, Inc.*,
  2025 WL 3296002 (N.D. Cal. Nov. 26, 2025) ................................................ 7

*La Barbera v. Ole Mexican Foods Inc.*,
  2023 WL 4162348 (C.D. Cal. May 18, 2023) .............................................. 8, 11

*Lokey v. CVS Pharmacy, Inc.*,
  2021 WL 633808 (N.D. Cal. Feb. 18, 2021) ................................................... 6

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................................... 15

*Menica-Montes v. Fit Foods Distrib., Inc.*,
  2025 WL 1185372 (N.D. Cal. Mar. 31, 2025) ................................................ 9

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

# TABLE OF AUTHORITIES

**Page(s)**

*Moore v. EO Prods., LLC*,
2023 WL 6391480 (N.D. Cal. Sept. 29, 2023).............................................................14

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021)..........................................................................................7, 11

*Mutual Pharm. Co. v. Ivax Pharms.*,
459 F.Supp.2d 925 (C.D. Cal. 2006)...............................................................................6

*Nexus Pharm., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*,
48 F.4th 1040 (9th Cir. 2022)......................................................................................5, 6

*O'Dea v. RB Health (US) LLC*,
779 F.Supp.3d 1135 (C.D. Cal. 2025)..............................................................................6

*Perez v. Nidek Co.*,
711 F.3d 1109 (9th Cir. 2013)..........................................................................................5

*Phan v. Sargento Foods, Inc.*,
2021 WL 2224260 (N.D. Cal. June 2, 2021) ...................................................................8

*Possin v. Experian Info. Sols., Inc.*,
2010 WL 11596120 (C.D. Cal. June 7, 2010)..................................................................8

*Reynolds v. Wal-Mart Stores, Inc.*,
2015 WL 1879615 (N.D. Fla. Apr. 23, 2015)................................................................10

*Robles v. GOJO Indus., Inc.*,
2023 WL 4946601 (9th Cir. Aug. 3, 2023)....................................................................11

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
2021 WL 11593043 (N.D. Cal. Aug. 16, 2021)...............................................................8

*Sponchiado v. Apple Inc.*,
2019 WL 6117482 (N.D. Cal. Nov. 18, 2019)..........................................................12, 13

*Summit Tech. v. High-Line Medical Instruments Co.*,
933 F. Supp. 918 (C.D.Cal.1996)....................................................................................6

*Summit Tech. v. High-Line Medical Instruments*,
922 F.Supp. 299 (C.D. Cal. 1996)...................................................................................5

*Torliatt v. Ocwen Loan Servicing, LLC*,
2020 WL 4495480 (N.D. Cal. June 22, 2020) .................................................................9

*U.S. v. Redmond*,
965 F.3d 416 (5th Cir. 2020) ...........................................................................................4

*Weiss v. Trader Joe's*,
838 F. App'x 302 (9th Cir. 2021)...................................................................................11

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024)...............................................................................7, 12, 13

*Whitfield v. U.S.*,
574 U.S. 265, 135 S. Ct. 785 (2015) ...............................................................................4

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ...........................................................................................6

**Statutes**

18 U.S.C. § 2113.................................................................................................................4

**TABLE OF AUTHORITIES**

**Page(s)**

**Regulations**

21 C.F.R. § 101.30(b)(3) ...................................................................................4, 5

iv

# I.   INTRODUCTION

Far from making his claims more plausible, Plaintiff's Opposition ("Opp.") shows that he has no support for his theories and that the Court should dismiss his Complaint. He alleges he was deceived by statements that, as a matter of law, could not have misled anyone and that dispel the very conclusion he claims to have reached. He cannot overcome that fundamental flaw by misreading Ninth Circuit precedent, by inventing new ways to misread the statements at issue, or by citing cases about bank robberies. The Court should dismiss his claims with prejudice.

Plaintiff uses much of his Opposition to argue that the explanation on Defendant Trader Joe's Company's (Trader Joe's) Freezer Pops' label—that the product consists of "FLAVORED JUICE BLENDS FROM CONCENTRATE WITH OTHER NATURAL FLAVORS & ADDED INGREDIENTS"—does not "accompany" the statement "100% JUICE," as required by FDA regulations. And based on that argument, he asserts that his claims are neither barred by the safe-harbor doctrine nor preempted, and that the Freezer Pop's label misled reasonable consumers. Plaintiff is wrong on all fronts.

First, the safe harbor applies because the Freezer Pops' label complies with all applicable regulations from the U.S. Food & Drug Administration ("FDA"). In particular, the disclosure of added ingredients indisputably "accompan[ies]" the "100% JUICE" declaration under 21 C.F.R. § 101.30(b)(3) when they both refer to the Product's "juice" and appear roughly two inches from each other. Plaintiff argues this is not close enough, but he cites not a single labeling case to support that contention; instead, he points to dictionary definitions and cases discussing what it means for **bank robbers** to "accompany" their victims. Not surprisingly, these authorities do not help his case.

Second, regardless of how Plaintiff tries to define "accompany," it is irrelevant because his state-law labeling claims are preempted. They hinge on

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

enforcing or interpreting regulations under the federal Food, Drug & Cosmetic Act ("FDCA"), and so not only "exist[] solely by virtue of the FDCA" but would require this Court to interpret FDA regulations that are barred to private litigants. Plaintiff has not pleaded any independent violation of state law, and he cannot bring state claims predicated entirely on alleged violations of the FDCA.

Third, on top of being barred and preempted, Plaintiff's claims also fail because no reasonable consumer would be misled—a threshold requirement for Plaintiff's CLRA and unjust enrichment claims. Plaintiff claims that he believed the Freezer Pops did not contain water or added ingredients and were not made with juice concentrate, but the Freezer Pops' label explicitly contradicts those very notions. The front label plainly and conspicuously states: "FLAVORED JUICE BLENDS FROM CONCENTRATE WITH OTHER NATURAL FLAVORS & ADDED INGREDIENTS" (hereinafter, the "Disclosure"). Plaintiff's interpretation of the label ignores the Disclosure altogether and would contradict the Ninth Circuit's clear rule that reasonable consumers are presumed to have read a product's front label in its entirety. Plaintiff attempts to manufacture consumer confusion by claiming that consumers might read the Disclosure to modify something other than the phrase "100% JUICE," but that theory fails to recognize that both statements explicitly refer to the Products' contents and are printed just inches from each other.

Separately, the Complaint fails to satisfy Rule 9(b) because it does not allege with particularity whether Plaintiff read and interpreted the Disclosure or term "Cherry Limeade" and, if he did, how those representations affected his purchasing decisions. And Plaintiff does not state a claim for breach of implied warranty or unjust enrichment because he fails to identify any actionable misrepresentation. The unjust-enrichment claim is also defective for purporting to apply California law to a nationwide class. Because Plaintiff's claims fail as a matter of law and amendment

2

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

would be futile, Trader Joe's seeks an order dismissing the case with prejudice.

## II.   ARGUMENT

### A.   The Safe Harbor Doctrine Bars Plaintiff's Claim.

No dictionary definition, and certainly no case about **bank robbery**, can overcome the key fact here: On the Freezer Pops' front label, the phrase "100% JUICE" appears just inches away from the Disclosure noting the presence of other ingredients. That places the label squarely within the FDA's safe harbor, which bars Plaintiff's claim. Plaintiff now argues in his Opposition that the safe harbor doctrine does not apply because the Disclosure does not "accompany" the phrase "100% JUICE" as the safe harbor requires. Opp. at 5:1-13. But that argument stems from Plaintiff's own idiosyncratic interpretation of the word "accompany"—an interpretation that finds no support in either the dictionaries he cites or the bizarre caselaw he references.

Plaintiff points to four dictionary definitions that, in his view, suggest that "a thing 'accompanies' another thing when it is right next to its object." Opp. at 7:22-26. But none of the cited definitions supports Plaintiff's assertion that to "accompany" requires immediate proximity. Much less do these definitions suggest, as Plaintiff contends, that the Disclosure cannot "accompany" the phrase "100% JUICE" because the two appear roughly **two inches** apart. None of Plaintiff's definitions is so precise or restrictive. *Compare* Declaration of M. Sloan, Ex. 1 (ECF No. 15-5) (displaying the Product's dimensions and scale) *with* Opp. at 7:18-21 ("[T]he Third New International Dictionary likewise defines 'accompany' to mean 'to exist or occur in conjunction or association with[.]'"); 7:11-13 ("Black's Law Dictionary defines 'accompany' as '[t]o go along with (another)…'").

Not surprisingly, Plaintiff cannot cite a single case that supports his interpretation of "accompany" in the labeling context. Instead, he cites two **bank robbery** cases addressing whether robbers forced victims to "accompany" them.

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

Opp. at 8:4-17. But these cases are as unhelpful to Plaintiff's position as they are irrelevant in a case about Freezer Pops. All these cases say is that bank robbers must "go with" their hostages to satisfy the forced-accompaniment provisions of 18 U.S.C. § 2113, and neither case says anything about the requisite proximity between robber and victim (which is presumably more than two inches in any event). *See Whitfield v. U.S.*, 574 U.S. 265 (2015) ("[T]o 'accompany' someone mean[s] to 'go with' him."); *U.S. v. Redmond*, 965 F.3d 416, 419 (5th Cir. 2020) ("[D]efining 'accompany' as '[t]o go with (a person) as a companion…'). Here, Plaintiff cannot seriously suggest that the Disclosure does not "go with" the phrase "100% JUICE": they both refer to the Product's juice, they appear on the same panel of the label, and they appear roughly two inches from each other. *See* Declaration of M. Sloan, Ex. 1 (ECF No. 15-5) (displaying the Product's dimensions and scale).

Because a cursory review of the Freezer Pops' front label shows that Trader Joe's complies with FDA regulations at 21 C.F.R. § 101.30(b)(3) by providing the required disclosure of added ingredients on the same panel as the "100% JUICE" declaration, RJN, Ex. 1, the safe-harbor doctrine creates an absolute barrier to liability. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel.* Co., 20 Cal. 4th 163, 182 (1999); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016).

### B.   Plaintiff's Claims Are Impliedly Preempted.

Even setting the safe harbor aside, the Court would still have to dismiss Plaintiff's claims because it tries to use state law to enforce federal law and is thus preempted. Plaintiff theorizes that the Freezer Pops' Disclosure of added ingredients does not sufficiently "accompany" the phrase "100% JUICE" and therefore violates a regulation under the FDCA. But courts have repeatedly held that state-law claims that "exist solely by virtue of the FDCA" or that "directly enforce" the FDCA are impliedly preempted by federal law. *Buckman Co. v.*

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

*Plaintiffs' Legal Comm.,* 531 U.S. 341, 353 (2001). Courts have rejected various attempts by private parties to circumvent the FDCA's exclusive enforcement scheme, including styling claims as state-law actions that are, in substance, attempts to enforce the FDCA and asserting state-law claims based solely on alleged FDCA violations. *Borchenko v. L'Oreal USA, Inc*., 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019); *see also In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 4356638, at \*3 (D. Ariz. Sept. 12, 2018).

Plaintiff tries to circumvent this clear caselaw, asserting that his allegations are not ***expressly*** preempted because his claims thread a "narrow gap" allowing state-law claims to proceed when a plaintiff is "suing for conduct that *violates* the FDCA" but is not "suing *because* the conduct violates the FDCA." Opp. 14: 20-25; *Perez v. Nidek Co*., 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis in original). But Plaintiff fails to meaningfully counter Trader Joe's position that his claims are ***impliedly*** preempted. To survive implied preemption, Plaintiff would have to allege an independent state-law claim—one that could exist without the FDCA and does not rely on federal-law violations as an essential element of the claim, so that it does not interfere with federal enforcement. *Buckman Co.,* 531 U.S. at 353; *Nexus Pharm., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1049 (9th Cir. 2022); *Collyer v. Catalina Snacks Inc*., 712 F. Supp. 3d 1276, 1288 (N.D. Cal. 2024)); *Dunbar v. Medtronic, Inc.,* 2014 WL 3056081 (C.D. Cal. 2014)); *Summit Tech.y v. High-Line Medical Instruments*, 922 F. Supp. 299, 306-7 (C.D. Cal. 1996).

Plaintiff fails to do so here because his state-law claims are not independent. He alleges that reasonable consumers are deceived by the Freezer Pops' label because the disclaimer about additional ingredients does not "accompan[y]" the "100% Juice declaration" as required by 21 C.F.R. §101.30(b)(3). That allegation, of course, is central to his claims and could not exist without the FDCA and its

requirements. And Plaintiff's claims would require the Court to analyze what "accompan[y]" means under FDCA requirements. Opp. 6:21-10:10. Because his claims would force this state Court to perform "authoritative interpretation and direct application of FDA regulations," it is preempted. *Mutual Pharm. Co. v. Ivax Pharms.*, 459 F. Supp.2d 925,935 (C.D. Cal. 2006) ((quoting *Summit Tech. v. High-Line Medical Instruments Co.,* 933 F. Supp. 918, 933 (C.D.Cal.1996)); *O'Dea v. RB Health (US) LLC*, 779 F.Supp.3d 1135, 1148(C.D. Cal. 2025); *accord Nexus Pharm., Inc.*, 48 F.4th at 1049.

### C.    The Freezer Pops' Label Would Not Mislead a Reasonable Consumer.

Plaintiff's claims also fail for the independent reason that no reasonable consumer would be misled by the Freezer Pops' label. The front label states that the Freezer Pops are "100% JUICE," and it also includes the Disclosure that it consists of "FLAVORED JUICE BLENDS FROM CONCENTRATE WITH OTHER NATURAL FLAVORS & ADDED INGREDIENTS." Plaintiff has never explained how a reasonable consumer could read that label and get the false impression that the Product is made *without* concentrates, water, or other ingredients. Compl. ¶ 21. Nor can he: The Freezer Pops' label "discloses the fact[s] that Plaintiff complains it omits." *Lokey v. CVS Pharmacy, Inc.*, 2021 WL 633808, at *5 (N.D. Cal. Feb. 18, 2021). Ninth Circuit precedent makes clear that dismissal is appropriate here because the Freezer Pops' front label "[makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

#### i.    The Label Makes Clear That the Product Contains Water And Non-Juice Ingredients.

Unable to allege anything misleading about the Disclosure's clear language, Plaintiff instead alleges deception based on the Label's design, asserting that the Disclosure is "made in smaller and unreadable font[]." Opp. at 19:4-6. But a

6

cursory review of the Label contradicts that assertion, and accepting Plaintiff's reading of the label would be contrary to the reasonable consumer standard and established Ninth Circuit precedent, essentially permitting consumers to ignore unambiguous and undisputed statements on a product's front label. In *Whiteside v. Kimberly Clark Corp.*, the Ninth Circuit made clear that a plaintiff "cannot simply look to [one] statement on the front panel, ignore the [others], and claim he has been misled." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024). In other words, the law presumes reasonable consumer read the entirety of a product's front label. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (The reasonable consumer "take[s] into account all the information available" to him.); *Kent v. Conopco, Inc.*, 2025 WL 3296002, at *9 (N.D. Cal. Nov. 26, 2025) (Plaintiffs "are not free to excise or ignore words on the label to manufacture customer confusion."). Plaintiff simply cannot square his idiosyncratic interpretation of the Freezer Pops' label—that it does not contain water or other added ingredients—with the Disclosure's plain language. Thus, dismissal is required as a matter of law.

Plaintiff concedes as much by citing *Freeman v. Time, Inc.*, a case where the Ninth Circuit applied the reasonable-consumer standard and ***rejected*** the same argument Plaintiff makes here: that consumers could be deceived because they were likely to "ignore the qualifying language in small print." *Freeman v. Time, Inc.* 68 F.3d 285, 289 (9th Cir. 1995). And while Plaintiff cites that case for the proposition that a disclaimer "can be misleading if it 'is hidden or unreadably small,'" Opp. at 19:1-5, he fails to establish that the Disclosure here was either hidden or too small to read. Even the Complaint's grainy, low-quality image of the Product's Label demonstrates that the Disclosure appears in high-contrast text (black letters against a hot-pink background) in a sizeable, legible typeface. *Id.* In other words, the Disclosure is readily apparent to any consumer who looks at the packaging. *See La*

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

*Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at \*10 (C.D. Cal. May 18, 2023) (if reasonable consumers "care about a given quality in a…product, they are willing to spend a few seconds investigating that aspect of it by at least engaging in a cursory reading of the packaging"); *accord Elliott v. Conagra Brands, Inc.*, 2024 WL 3275567, at \*4 (E.D. Cal. July 1, 2024) (dismissing mislabeling claim where a clarifying front label statement "printed in yellow text, a stark contrast to the surrounding white words, against a green background" in the packaging's bottom lefthand corner was "clearly visible to the consumer who takes the time to pick up the product and look at the front label").

The Opposition goes on to cite a string of plainly distinguishable cases.[1] Opp. at 19:7-18. In *Possin v. Experian Info. Sols., Inc.*, for example, a website promised a "free" credit service and included a disclaimer that the service was actually $14.95 per month. 2010 WL 11596120, at \*4 (C.D. Cal. June 7, 2010). The disclaimer there appeared on the bottom of the webpage "using a small default font size…in a light blue color on top of a *somewhat* darker blue background." *Id.* (emphasis added). The court held that, unlike in *Freeman*, the "degree of contrast between the text and its background is not high enough, and the text [is] not large enough, for the Court to find that, as a matter of law, the text was not 'hidden or unreadably small' or that 'no reasonable reader could ignore it.'" *Id.* Similarly, in

---

[1] The Plaintiffs' reliance on *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC* is misplaced, as the qualifying language in that case appeared on the product's *side panel* whereas the misleading statement appeared on the front label. 2021 WL 11593043, at \*11 (N.D. Cal. Aug. 16, 2021). Here, by contrast, the Disclosure appears prominently on the *front* label, thus a reasonable consumer could not be deceived. *Phan v. Sargento Foods, Inc.* is also inapposite. The court denied a motion to dismiss on the grounds that a disclaimer which corresponded to an asterisked statement would not ameliorate the front label's tendency to mislead reasonable consumers. 2021 WL 2224260, at \*2-3 (N.D. Cal. June 2, 2021). Here, by contrast, the Disclosure provides the very information Plaintiff claims it omits. The size of the disclaimer in *Phan* was not dispositive like Plaintiff suggests—in fact, the court noted that the disclaimer appeared on the front label and "assum[ed] a reasonable consumer would see and read the disclaimer in small font[.]"

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

*Mencia-Montes v. Fit Foods Distrib., Inc.* the disclaimer was "buried on the bottom of the label, in small print and among other fine print language," so the court reasoned it could "easily be missed by a reasonable consumer." 2025 WL 1185372, at *4 (N.D. Cal. Mar. 31, 2025).

The Disclosure here is nothing like the disclaimers in those cases. The Disclosure here is indisputably located on the same front label that carries the "100% JUICE" declaration, and it appears in high-contrast text—black capital letters against a pink background—in a readable font size. It appears in bigger font than the front label's "USDA Organic" representation. And unlike in *Menica-Montes*, the Disclosure is not "buried" among other fine-print text. It is ***four lines*** of black text, in all capital letters, offset in the middle of the packaging's righthand side. A customer would have to close their eyes to miss it. And upon reading it, no reasonable consumer could conclude that the Product does not contain water or other added ingredients. Accordingly, Plaintiff's reading of the label is unreasonable as a matter of law and the Complaint should be dismissed.

### ii. Plaintiffs' Reliance On Caselaw From A Florida District Court Is Misplaced.

Without any caselaw from the Ninth Circuit to support his position, Plaintiff turns to a decision that is unpublished, from a different circuit, and off-point: *Reynolds v. Wal-Mart Stores, Inc.*, from the Northern District Court of Florida. Opp. at 18:16-28; 19:18-20:2. Of course, decisions by out-of-circuit district courts are not binding and "have little weight compared to relevant decisions in this circuit." *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 4495480, at *4 n.4 (N.D. Cal. June 22, 2020).

The facts in in *Reynolds* are also substantially different from those here. There, Wal-Mart labeled a juice product "100% Cranberry Pomegranate," and plaintiff sued on the grounds that this phrase was misleading because the Product

primarily contained apple, grape, and plum juice. *Reynolds v. Wal-Mart Stores, Inc.*, 2015 WL 1879615, at *1 (N.D. Fla. Apr. 23, 2015). The court held the phrase "flavored juice blend" did not cure the inaccurate statement because it suggests that the "juice blend is some proportion of just cranberry and pomegranate juice." *Id.* at *6.[2] Here, the Freezer Pop's front label is not ambiguous because it provides the very information Plaintiff complains is missing—that the Freezer Pops contain water (*i.e.*, made from concentrate) and contain non-juice ingredients (*i.e.*, other natural flavors and added ingredients). *See* Compl. at ¶ 21. The use of the term "Cherry Limeade" also alerts a reasonable consumer that the Freezer Pops may contain water and other added ingredients. *See Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 965 (N.D. Cal. 2022) (recognizing the dictionary definition of "ade" "alert[s] reasonable consumers to the presence of sugar"); Declaration of N. Camastra, Ex. 1 (ECF No. 15-7) ("limeade" is "a beverage of sweetened lime juice mixed with plain or carbonated water").

### iii. The Disclosure Need Not Be "Immediately Adjacent" To The Phrase "100% JUICE" For Reasonable Consumers To Link the Two Statements.

Plaintiff next contends that a reasonable consumer would be misled because the phrase "FLAVORED *JUICE* BLENDS FROM CONCENTRATE WITH OTHER NATURAL FLAVORS & ADDED INGREDIENTS" does not appear to modify the "100% *JUICE*" declaration. Compl. ¶¶ 13, 19 (emphasis added in both); Opp. at 20:15-19. Even though both statements explicitly refer to the Product's "JUICE," Plaintiff contends the "disclaimer appears to modify the description of the flavor" of the Freezer Pops (*e.g.*, Cherry Limeade). Opp. at 21:1-13; 22:13-23.

---

[2] Plaintiff goes on to cite a warning letter issued by the FDA in 2009 in response to Nestle's "Juicy Juice All Natural 100% Juice Orange Tangerine" and "100% Juice Grape" products. Opp. at 19:18-27. Like in *Reynolds*, this warning letter is inapposite because the issue there was whether the product was composed of different juices than those disclosed on the label. It has no bearing on the relationship between "100% JUICE" and the Disclosure here.

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

Under Plaintiff's logic, customers would read the front label's phrase "USDA Organic" to refer only to the "Cherry Limeade" Freezer Pops—not all of the other Freezer Pop flavors in the packages —because the phrase only appears in immediate proximity to the "Cherry Limeade" flavor. That is an untenable result that belies the common sense customers bring to purchasing decisions. *See*, *e.g.*, *Robles v. GOJO Indus., Inc.*, 2023 WL 4946601, at *2 (9th Cir. Aug. 3, 2023) ("General knowledge and common sense further inform the reasonable consumer considering a product."). Plaintiff's position also ignores the Disclosure's plain language—reasonable consumers *can only* conclude that the Disclosure modifies the phrase "100% JUICE" because it describes qualities about the juice: (1) that it is derived "from concentrate" (*i.e.*, reconstituted with the addition of water); and (2) that it consists of "juice blends." The reasonable consumer understands these characteristics cannot be imparted onto the "flavoring" of the Freezer Pops as Plaintiff suggests. Opp. at 22:16-24. Indeed, the law presumes reasonable consumers understand the basic characteristics of the Products they purchase. *See, e.g.*, *Moore*, 4 F.4th at 883 ("[C]onsumers would generally know that it is impossible to exercise complete control over where bees forage…" therefore, "a reasonable consumer would not understand Trader Joe's label as promising" honey derived from a single floral source).

Plaintiff's argument severely undermines the reasonable-consumer standard because the law presumes reasonable consumers do not "just view one phrase or image in isolation, but look[] at the entirety of the packaging together." *La Barbera*, 2023 WL 4162348, at *10 (citing *Moore*, 4 F.4th at 882); *accord Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021) ("[P]roduct packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception[.]"). And *Bobo v. Optimum Nutrition, Inc.* makes clear that reasonable consumers can and do understand that two separate

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

statements can refer to the same quality about a product. Opp. at 21:20-23; 22:1-4. There, Optimum Nutrition's whey-protein powder was prominently labeled "100% WHEY" in the largest typeface on the front label, and a second statement—separate from the phrase "100% WHEY," printed at the bottom of the front label in "smaller text"—clarified that 100% of the product's *protein* was from a whey protein source. 2015 WL 13102417, at *1-2 (S.D. Cal. Sept. 11, 2025). The court held no reasonable consumer could be misled to think the entire contents of the container is protein because the smaller, separate statement specified that 100% of the protein is from a single source. *Id.* at *4-5. Implicit in this finding is that reasonable consumers are capable of holding two statements in their mind's eye when reviewing a product's label. *Id.* at *5 ("Ignoring legible and clear statements on the front of the label that dispel that the product is entirely [juice] is viewing the product in an unreasonable manner."); *accord Sponchiado v. Apple Inc.*, 2019 WL 6117482, at *4 (N.D. Cal. Nov. 18, 2019) (finding plaintiffs "cannot ignore the obvious language" that appears "approximately 10 lines down" from the advertisement's primary promise).

Plaintiff looks for support in *Whiteside v. Kimberly Clark Corp.* and *Sponchiado v. Apple Inc.*, but he finds none. He cites *Whiteside* for the proposition that "accompany" means immediate proximity under 11 C.F.R. § 101.30(b)(3). Opp. at 12:1-3 ("[T]he disclosure in *Whiteside* 'accompanied' the deceptive claim because it was adjacent to it."). But *Whiteside* says nothing about what the term "accompany" means under section 101.30(b)(3). That case is about alleged violations of California's consumer-protection statutes and the reasonable consumer standard, and the Ninth Circuit's opinion did not hinge on the proximity of the disclaimer to the representation it clarified. 108 F.4th at 785. It holds that reasonable consumers cannot, as Plaintiff attempts to do here, ignore legible information on a product's front label. *Id.* ("Plaintiff cannot simply look to [one]

12

statement on the front panel, ignore the [others], and claim he has been misled."). The *Whiteside* court also cited and agreed with *Bobo v. Optimum Nutrition Inc.*, which dealt with representations not immediately adjacent on the Product's label. *Id.*; *Bobo*, 2015 WL 13102417 at *5 ("Viewing only the information on the front of the label, stated in legible text, a reasonable consumer would not be deceived or confused[.]").

*Sponchiado* is no help either. It is another reasonable consumer case and, contrary to Plaintiff's suggestion, does not define "accompany" under C.F.R. § 101.30(b)(3). Opp. at 12:9-17. Rather, *Sponchiado* held that plaintiffs "cannot ignore [] obvious language" that appeared "approximately ten lines down" from the purportedly misleading statement and cured its propensity to mislead consumers. 2019 WL 6117482, at *4.

*Whiteside* and *Sponchiado* are directly on point and foreclose Plaintiff's claims. Plaintiff does not and cannot allege that the Disclosure is inconspicuous or illegible. The Disclosure is readily apparent to anyone who looks at the front label.

### D.     The Complaint Fails To Satisfy Rule 9(b)

Plaintiff's Complaint fails to satisfy Rule 9(b) because it does not specify how the Plaintiffs read and interpreted (1) the Disclosure and (2) the term "Cherry Limeade." The Complaint never alleges whether Plaintiff himself read these representations at all or, if he did, how they affected his purchasing decisions. Ample caselaw makes clear that failure to allege how a plaintiff interpreted clear representations warrants dismissal. *See Anthony v. Pharmavite*, 2019 WL 109446, at *5 (N.D. Cal. Jan. 4, 2019) (finding "Plaintiffs' complaint is lacking in the particularity of pleading required by Rule 9(b)" because "[t]he complaint is devoid of any allegations regarding whether Plaintiffs saw the asterisk, read the corresponding disclaimer, and if they did read it, how the disclaimer affected their purchasing decision."); *Bird v. First Alert, Inc.*, 2015 WL 3750225, at *9 (N.D. Cal.

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

June 15, 2015) (dismissing CLRA claim under Rule 9(b) where the complaint "fail[ed] to plead facts showing…when plaintiff reviewed [the] disclosures…what disclosures she reviewed"); *accord Chase v. Hobby Lobby Stores, Inc.*, 2017 WL 4358146, at *9 (S.D. Cal. Oct. 2, 2017) (dismissing false advertising claim for failure to satisfy Rule 9(b) because plaintiff did not allege whether she saw the asterisk in the challenged advertisement or if she read the corresponding disclaimer).

The Opposition does not rebut these holdings and barely tries. *See* Opp. at 24:11-25:7. It merely states, in conclusory fashion, that the Complaint "lays out in granular detail what is alleged to be deceptive about Defendant's "100% Juice" claim[.]" *Id.* at 24:17-18. But Plaintiff offers no legal authority to support that position, and he cite to an inapposite case that does not discuss Rule 9(b)'s application in the reasonable-consumer context. Opp. at 24; *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (discussing Rule 9(b) as applied to "loss causation" in securities fraud litigation).

### E. <u>Plaintiff' Breach of Implied Warranty and Unjust Enrichment Claims Fail.</u>

For the reasons stated in Sections II. A.–D, *supra*, Plaintiff has not alleged any actionable misrepresentations, so his implied-warranty and unjust-enrichment claims necessarily fail. Mot. at 19-20. And his unjust-enrichment claim should be dismissed for the independent reason that Plaintiff fails to specify which state law he brings it under. *See Moore v. EO Prods., LLC*, 2023 WL 6391480, at *9 (N.D. Cal. Sept. 29, 2023) (dismissing unjust enrichment claim because "it does not specify which state law it is being brought under"). Plaintiff contends California law applies to his equitable claims, Opp. 25:11-18, but he does not address the fact that his Complaint seeks a *nationwide* class on behalf of all similarly situated consumers. Compl. at ¶ 31. The law prohibits applying California law to a

14

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

nationwide class. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1121 (N.D. Cal. 2021) (dismissing unjust enrichment claim brought on behalf of nationwide class because "[t]he elements necessary to establish a claim for unjust enrichment…vary materially from state to state"); *accord Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (overruled on other grounds) ("Each class member's [unjust enrichment] claim should be governed by the [unjust enrichment] laws of the jurisdiction in which the transaction took place.").

## III.   CONCLUSION

Plaintiff cannot salvage his claims, which fail as a matter of law. Trader Joe's respectfully seeks an order dismissing Plaintiff's Complaint with prejudice.

Dated: January 16, 2026

O'MELVENY & MYERS LLP
DAWN SESTITO
MARTHA HUTTON
NATALIE D. CAMASTRA

By:  */s/ Dawn Sestito*
Dawn Sestito

Attorneys for Defendant
Trader Joe's Company

REPLY ISO MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:25-CV-10584-CV-AGRX

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Trader Joe's Company ("Trader Joe's"), certifies that Trader Joe's Reply in Support of Defendant Trader Joe's Company's Motion to Dismiss Plaintiff's Class Action Complaint (ECF # 15) is produced using 14-point Times New Roman font including footnotes, contains approximately 4,800 words, which complies with the word limit of L.R. 11-6, and is 15 pages long, which complies with Judge Valenzuela's standing orders.

Executed on this 16th day of January 2026 in Los Angeles, California.

Dated: January 16, 2026

O'MELVENY & MYERS LLP
DAWN SESTITO
MARTHA HUTTON
NATALIE D. CAMASTRA

By: ___*/s/ Dawn Sestito*___
Dawn Sestito

Attorneys for Defendant
Trader Joe's Company